LULA SANDERS, CYNTHIA EURE, ANGELINE McINERNY, JOSEPH C. MOBLEY, on BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED, PLAINTIFFS v. STATE PERSON-NEL COMMISSION, A BODY POLITIC, OFFICE OF STATE PERSONNEL, A BODY POLITIC; THOMAS H. WRIGHT, STATE PERSONNEL DIRECTOR (IN HIS OFFICIAL CAPACITY); TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, A BODY POLITIC AND CORPORATE; MICHAEL WILLIAMSON, DIRECTOR OF THE RETIREMENT SYSTEM DIVISION AND DEPUTY TREASURER OF THE STATE OF NORTH CAROLINA (IN HIS OFFICIAL CAPACITY); RICHARD H. MOORE, TREASURER OF THE STATE OF NORTH CAROLINA AND CHAIRMAN OF THE BOARD OF TRUSTEES OF THE RETIREMENT SYSTEM (IN HIS OFFICIAL CAPACITY); TEMPORARY SOLUTIONS, A SUBDIVISION OF THE OFFICE OF STATE PERSONNEL, AND STATE OF NORTH CAROLINA, DEFENDANTS

No. COA08-1179

(Filed 2 June 2009)

**1. Public Officers and Employees— temporary state employees—employment exceeding twelve consecutive months—status and benefits—breach of contract**

Plaintiff workers who were employed by state agencies as temporary employees stated claims against the State Personnel Commission for breach of contract based on its failure to give them permanent state employee compensation, status, and benefits after they had been employed for twelve consecutive months where plaintiffs' complaint sufficiently alleged the existence of contracts and a breach of personnel rules under which they were hired. The case is remanded for a declaratory judgment to declare plaintiffs' status and rights in their employment by the state agencies.

**2. Declaratory Judgments— granting of motion to dismiss—not equivalent of declaration—legally recognized injury—right to declaration—unavailability of monetary relief**

The granting of a motion to dismiss a complaint which seeks declaratory judgment as a remedy is not a functional equivalent of a declaratory judgment. Where there is a legally recognized injury, like a breach of contract, or where an important public policy is at issue which has been recognized by our Supreme Court as the functional equivalent of a legally recognized form of injury, N.C.G.S. § 1-253 provides that the complainant is entitled to a declaration, even if no monetary relief is available.

3. **Public Officers and Employees— equal protection—temporary state employees—appointments exceeding twelve months**

The trial court did not err by dismissing plaintiffs' equal protection claims under Article I, Section 19 of the North Carolina Constitution even though the State granted benefits only to those employees who held permanent appointments and not to those who held temporary appointments exceeding twelve months because: (1) the Administrative Code of North Carolina's Office of State Personnel expressly authorized differential employee appointments including, for example, permanent, time-limited permanent, and temporary; (2) plaintiffs failed to meet their burden under the rational basis test to show that there was no governmental justification for defendants' actions in granting benefits only to persons with permanent appointments; and (3) many possible and valid reasons existed for defendants' actions in granting benefits only to those employees who hold permanent appointments, including that the State Personnel Commission during the relevant time could neither create a new position without authorization nor pay benefits without funds from which such payments could be authorized, and the need to select permanent candidates on a competitive basis by not allowing temporary employees who were in positions longer than twelve months to automatically become permanent employees.

4. **Public Officers and Employees— enjoyment of fruits of labor—temporary state employees—appointments exceeding twelve months**

The trial court did not err by dismissing plaintiffs' claim under Article I, Sections 1 and 35 of the North Carolina Constitution even though plaintiffs contend they showed defendants' alleged arbitrary and capricious treatment classifying plaintiffs as temporary employees when they held their positions longer than twelve months, denied them benefits, and deprived them of the enjoyment of the fruits of their own labor because: (1) the pertinent regulation did not exhibit a situation in which the legislature was interfering with an ordinary and simple occupation, nor was the employment scheme intended to be free from governmental regulation; (2) such regulation was rationally related to a substantial governmental interest; (3) nothing in the governmental action arbitrarily or irrationally limited plaintiffs' right to earn a livelihood; and (4) this claim was substantively indistinguishable

from plaintiffs' equal protection claim that the Court of Appeals already concluded was without merit.

Appeal by plaintiffs from judgment entered 5 March 2008 by Judge Clarence E. Horton, Jr., in Wake County Superior Court. Heard in the Court of Appeals 11 March 2009.

*Kilpatrick Stockton LLP, by Jim Kelly and Gregg E. McDougal; and Jack Holtzman, for plaintiff appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorneys General Norma S. Harrell and Lars F. Nance, for defendant appellees.*

*General Counsel Thomas A. Harris for State Employees Association of North Carolina, Inc., amicus curiae.*

HUNTER, JR., Robert N., Judge.

Plaintiffs, who worked for the State as "temporary" employees for periods exceeding twelve months, assert that they have been wrongfully denied employment benefits and seek relief for breach of contract and violations of the North Carolina Constitution Article I, sections 1, 19, and 35. In a 5 March 2008 order, the trial court (Horton, Jr., J.) dismissed plaintiffs' claims for failure to state a claim upon which relief may be granted, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2007). Because plaintiffs stated a valid claim for breach of contract, we reverse as to that claim and remand. Plaintiffs failed to state valid claims under the equal protection or fruits of their labor clauses of the North Carolina Constitution; we therefore affirm as to those claims.

## I. Background

Plaintiffs Lula Sanders and Cynthia Eure filed suit in the Superior Court of Wake County on 1 April 2005 against the State of North Carolina, the State Personnel Commission ("SPC"), the Office of State Personnel, Temporary Solutions, and the Teachers' and State Employees' Retirement System, as well as against the State Personnel Director (Thomas H. Wright), the State Treasurer (Richard H. Moore), and the Director of the Retirement Systems Division of the Department of State Treasurer (Michael Williamson), in their official capacities (collectively, "defendants"). In a second amended complaint filed 23 June 2005, Sanders and Eure were joined by Angeline McInerny and Joseph C. Mobley (collectively, "plaintiffs") and complained that they and "other class members have been wrongfully

denied the employee rights, compensation, benefits, and status to which they are entitled by law." Plaintiffs seek class certification which has not yet been heard. Specifically, plaintiffs contended that because they and "proposed class members worked or upon information and belief are working for the state for periods exceeding 12 consecutive months without benefits," the State "misclassified" them and "illegally denied them the benefits provided to similarly-situated permanent or time-limited permanent State employees." Based on the facts alleged in the complaint, plaintiffs sought redress for violations of the North Carolina Administrative Code, breach of contract, and violations of the North Carolina Constitution.

Plaintiff Sanders was hired by Temporary Solutions, employed in a temporary assignment in the Division of Emergency Management between September of 1999 and October of 2002 without receiving any benefits, and paid by Temporary Solutions with funds received from the agency with which she was placed. She became employed as a permanent State employee in June of 2004. Plaintiff Eure was hired by Temporary Solutions, employed in a temporary assignment in the Division of Emergency Management between December of 1999 and April of 2002 without receiving any benefits, and paid by Temporary Solutions with funds received from the agency with which she was placed. She has not been employed by the State since April 2002. Plaintiff McInerny was hired by Temporary Solutions, employed in a temporary assignment in the Division of Emergency Management between September of 2000 and April of 2003 without receiving any benefits, and paid by Temporary Solutions with funds received from the agency with which she was placed. She then held a time-limited appointment with the same employer from April of 2003 until September of 2004, later resigned, and has not since been employed by the State. Plaintiff Mobley was hired by Temporary Solutions, employed in a temporary assignment with the North Carolina Highway Patrol from January of 1998 until May of 2005 without receiving any benefits, and paid by Temporary Solutions with funds received from the agency with which he was placed.

In their prayer for relief, plaintiffs sought, among other things, monetary damages including benefits, compensation, attorneys' fees and expenses, and "all funds to which they and other class members are entitled"; Class certification pursuant to Rule 23 of the North Carolina Rules of Civil Procedure; injunctive relief "against retaliatory termination of Plaintiff Mobley"; a "permanent injunction ordering Defendants to comply with their legal and fiduciary duties to

inform all class members of their rights to receive benefits in accordance with State regulations and applicable law"; and a "declaratory judgment pursuant to N.C. Gen. Stat. § 1-253 holding that the Defendants' practices in denying compensation, rights, benefits and permanent employee status to Plaintiffs and class members violate the law."

On 22 July 2005, defendants answered and moved to dismiss the action as barred by principles of sovereign and/or qualified immunity and for a failure to state a claim for relief. Following a hearing on defendants' motion to dismiss argued solely as to sovereign immunity, the trial court (Allen, Jr., J.) dismissed the remaining four claims in an Order & Judgment entered on 22 September 2005. On appeal, this Court on 1 May 2007, affirmed the dismissal on the basis of sovereign immunity as to the claim for relief based on a violation of 25 NCAC 1C.0405 (2006) but reversed as to the dismissal of the claims for breach of contract and constitutional violations. *Sanders v. State Personnel Comm'n*, 183 N.C. App. 15, 644 S.E.2d 10 ("*Sanders I*"), *disc. review denied*, 361 N.C. 696, 652 S.E.2d 653 (2007). In *Sanders I*, we stated that the trial court "declined to address defendants' motion to dismiss pursuant to Rule 12(b)(6)." *Id.* at 18, 644 S.E.2d at 13.

On remand, the Honorable Sarah Parker, Chief Justice of the Supreme Court of North Carolina, designated the matter as an "exceptional" case to be heard pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts and assigned it to Special Superior Court Judge Clarence E. Horton, Jr. On 1 February 2008, defendants' motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) was heard as to all pending claims as was plaintiffs' motion for class certification. On 5 March 2008, the trial court stated that plaintiffs' "three surviving claims" did not "state a claim for relief," and granted defendants' motion to dismiss as to "plaintiffs' remaining claims for relief." The court then specified, "that is, for breach of contract and for violations of the 'equal protection' and the 'fruits of their own labor' clauses of the North Carolina Constitution[.]" On 1 April 2008, plaintiffs appealed. The record on appeal was settled by stipulation on 17 September 2008, filed in this Court on 22 September 2008, and docketed on 6 October 2008.

## II. Issues

The issues presented in this appeal are whether, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), the trial court properly dismissed

plaintiffs' claims for relief for: (1) breach of contract; (2) violation of the North Carolina Constitution Article I, Section 19; and (3) violation of the North Carolina Constitution Article I, Sections 1 and 35.

### III. Standard of Review

Motion to Dismiss

This Court reviews the grant of a motion to dismiss de novo. *Lea v. Grier,* 156 N.C. App. 503, 507, 577 S.E.2d 411, 414 (2003). A motion to dismiss made pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Harris v. NCNB,* 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In order to withstand such a motion, the complaint must provide sufficient notice of the events and circumstances from which the claim arises and must state sufficient allegations to satisfy the substantive elements of at least some recognized claim. *Hewes v. Johnston,* 61 N.C. App. 603, 604, 301 S.E.2d 120, 121 (1983). The question for the Court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. *See Stanback v. Stanback,* 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979). In general, " 'a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*' " *Id.* (quoting 2A Moore's Federal Practice, § 12.08, pp. 2271-74 (2d ed. 1975)). Such a lack of merit may consist of the disclosure of facts which will necessarily defeat the claim as well as the absence of law or fact necessary to support a claim. *Sutton v. Duke,* 277 N.C. 94, 102-03, 176 S.E.2d 161, 166 (1970).

### IV. Discussion

The SPC is a regulatory commission that is "responsible for 'establish[ing] policies and rules' relating to, *inter alia,* position classification, compensation, qualification requirements, and holiday, vacation, and sick leave." *Sanders I,* 183 N.C. App. at 23, 644 S.E.2d at 15 (citing N.C. Gen. Stat. § 126-4 (2005)). Plaintiffs' claims stem from a rule adopted by the SPC which bars the State from employing "temporary" workers for more than twelve consecutive months. The rule provides:

(a) A temporary appointment is an appointment for a limited term, normally not to exceed three to six months, to a permanent or temporary position. Upon request, the Office of State Personnel shall approve a longer period of time; but in no case shall the

temporary employment period exceed 12 consecutive months. (Exceptions for students and retired employees: Students are exempt from the 12-months maximum limit. If retired employees sign a statement that they are not available for nor seeking permanent employment, they may have temporary appointments for more than 12 months. "Retired" is defined as drawing a retirement income and social security benefits.)

(b) Employees with a temporary appointment do not earn leave, or receive total state service credit, health benefits, retirement credit, severance pay, or priority reemployment consideration.

25 NCAC 1C.0405. Plaintiffs further rely on 25 NCAC 1C.0402, which explains that "[i]f an employee is retained in a time-limited permanent position beyond three years, the employee shall be designated as having a permanent appointment."

## A. Breach of Contract

**[1]** Plaintiffs first contend that it was error for the trial court to dismiss their breach of contract claim because their "[c]omplaint alleges both of the elements of a breach of contract claim." In a breach of contract action, a complainant must show that there is " '(1) existence of a valid contract, and (2) breach of the terms of that contract.' " *Toomer v. Garrett*, 155 N.C. App. 462, 481, 574 S.E.2d 76, 91 (2002) (citation omitted), *disc. review denied, appeal dismissed,* 357 N.C. 66, 579 S.E.2d 576 (2003).

We first consider whether there was a valid contract between the parties. This Court has previously explained that "[t]he Legislature has delegated, to the extent of the [SPC]'s statutory powers, its own legislative powers over the State's personnel system [and] [t]herefore, rules and policies made pursuant to the [SPC]'s statutory authority have the effect of law." *N.C. Dept. of Justice v. Eaker*, 90 N.C. App. 30, 37-38, 367 S.E.2d 392, 398 (citations omitted), *disc. review denied,* 322 N.C. 836, 371 S.E.2d 279 (1988), *overruled on other grounds by Batten v. N.C. Dept. of Correction*, 326 N.C. 338, 342, 389 S.E.2d 35, 39 (1990), *overruled in part on other grounds by Empire Power Co. v. N.C. Dep't of E.H.N.R.*, 337 N.C. 569, 584, 447 S.E.2d 768, 777 (1994). Further, any relevant regulations of the SPC as well as statutory and constitutional provisions must be read into any contract that might exist between plaintiffs and their employers. *See, e.g., McNally v. Allstate Ins. Co.*, 142 N.C. App. 680, 683, 544 S.E.2d 807, 809, *disc.*

*review denied*, 353 N.C. 728, 552 S.E.2d 163 (2001) (explaining "statute in effect at the time the contract is signed becomes part of the contract"). Thus, we agree with plaintiffs' assertion that the regulatory code has the effect of law and is incorporated into the employment contract when employees are placed into a temporary assignment. We also agree that defendants, pursuant to the SPC's regulatory authority, entered into a valid employment contract with plaintiffs. *See Sanders I*, 183 N.C. App. at 22, 644 S.E.2d at 14 (stating "the State entered into a contract of employment with plaintiffs," and "there is no dispute that plaintiffs were validly employed by the State"). There is an agreement between the parties whose term is known and agreed. What is unknown is what are the legal relationships and status of the parties when the contract continues in effect after the expiration of the agreed upon terms.

We now turn to plaintiffs' claim for breach of contract. The record reflects that in their answer to plaintiffs' complaint, defendants acknowledged that the SPC promulgated 25 NCAC 1C.0405 and that plaintiffs were hired for temporary appointments, which then exceeded twelve months. Thus, by defendants' own admission, the rules governing plaintiffs' employment status (i.e. legal relationship) are breached. Because there is a breach of the rules under which the contract was formed, we hold that plaintiffs' complaint sufficiently alleged a breach of contract claim and should have survived defendants' motion to dismiss. *See Sanders I*, 183 N.C. App. at 22, 644 S.E.2d at 14 (stating plaintiffs "alleged the breach of an actual employment contract"); *see also Stanback*, 297 N.C. at 185, 254 S.E.2d at 615.

Less clear, however, are the contract terms. *Sanders I*, 183 N.C. App. at 22, 644 S.E.2d at 14 (stating "the dispute between the parties concerns only the actual terms of their contracts"). The plaintiffs assert an entitlement to permanent status and benefits because their employment exceeded twelve months. Plaintiffs supply no reference to regulations that would entitle them to permanent contractual employment or benefits. Though plaintiffs contend that reading 25 NCAC 1C.0405 in conjunction with 25 NCAC 1C.0402 establishes the legislature's "obvious intent [] to prevent the State from employing 'temporary' workers for more than 12 consecutive months without providing them with benefits," such a reading ignores 25 NCAC 1C.0405(b), which declares that employees with a temporary appointment do not receive benefits. Plaintiffs' assertions further ignore other legislative requisites for establishing and filling appointments. *See, e.g.*, 25 NCAC 1H.0609 ("An appointment may be made only if a

classified and budgeted vacancy exists in the position complement authorized for the agency.") Moreover, our state constitution requires that "appropriations" must be "made by law" in order for money to be "drawn from the State treasury." N.C. Const. art. V, § 7. Thus, if the court below finds defendants automatically converted plaintiffs' positions from temporary to permanent on their own accord without appropriate classification and budgetary approval, they would have enacted an employment scheme in direct contravention of the state constitution and other sections of the regulatory scheme.

Inasmuch as defendants contend that no contract exists when reading the allegations in context with the regulations and statutes, and it cannot therefore be a breach of contract, we are likewise unpersuaded. In asserting that "[t]he only basis for plaintiffs' complaint is that some agencies or supervisors *allegedly* violated a rule against employing persons with temporary appointments for more than twelve months," (emphasis added), defendants ignore the SPC's mandate that "in no case shall the temporary employment period exceed 12 consecutive months." 25 NCAC 1C.0405.

Plaintiffs' complaint sufficiently alleges existence of a contract and a breach of the personnel rules under which they were hired; their complaint should have survived the motion to dismiss. Although plaintiffs sought monetary damages, class certification, and injunctive relief with rights to receive benefits, they also sought a declaratory judgment with requested compensation, status, and benefits. North Carolina's Declaratory Judgment Act provides that: "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." N.C. Gen. Stat. § 1-253 (2007).

> "The test of the sufficiency of a complaint in a declaratory judgment proceeding is not whether the complaint shows that the plaintiff is entitled to the declaration of rights in accordance with his theory, but whether he is entitled to a declaration of rights at all, so that even if the plaintiff is on the wrong side of the controversy, if he states the existence of a controversy which should be settled, he states a cause of suit for a declaratory judgment."

*Insurance Co. v. Roberts*, 261 N.C. 285, 288, 134 S.E.2d 654, 657 (1964) (citation omitted).

Although the regulations clearly state that temporary employees shall not be employed greater than twelve months, they fail to provide

a remedy or to establish a classification for a "temporary" employee whose term then exceeds the twelve months. *Compare* 25 NCAC 1C.0402(b)(2) ("If an employee is retained in a time-limited permanent position beyond three years, the employee shall be designated as having a permanent appointment."). Plaintiffs, who were left in "temporary" positions find themselves in legal limbo in which rules governing appointment terms have been broken but in which the legal result is uncertain. Thus, while we state no opinion here as to what relief, if any, is available on plaintiffs' claims, we hold that plaintiffs are entitled to have their rights declared. *See* N.C. Gen. Stat. § 1-253.

On remand, the trial court's task is to assess the terms of plaintiffs' contracts with defendants at the twelve month and one day mark and beyond. Although plaintiffs allege that "defendants failed to adhere to the existing terms of the contract," it is unclear as to whether or how those terms changed. Even assuming defendant's breach of their own rules, it is clear that plaintiffs accepted some sort of arrangement with defendants by accepting continued work and compensation, without a permanent appointment and without benefits. Whether that arrangement was discussed with plaintiffs individually or collectively and what plaintiffs understood about their status are relevant inquiries requiring further factual development. Helpful to this inquiry would be what, if any, remedies would be allowable under the regulatory scheme, and whether the remedial nature of a directive to defendants is an appropriate judicial resolution.

For the above-stated reasons, we reverse the trial court's grant of defendants' motion to dismiss under Rule 12(b)(6) on the breach of contract claim and remand for a declaratory judgment, to declare plaintiffs' status and rights pursuant to the Uniform Declaratory Judgment Act.

**[2]** Appellees argue that in granting their motion to dismiss the court has de facto given the appellants the declaration they seek. We disagree. We hold that granting a motion to dismiss a complaint which seeks declaratory judgment as a remedy is not the functional equivalent of a declaratory judgment. Where there is a legally recognized injury, like breach of contract, or where an important public policy is at issue which has been recognized by our Supreme Court as the functional equivalent of a legally recognized form of injury, *Goldston v. State*, 361 N.C. 26, 33-35, 637 S.E.2d 876, 881-82 (2006), N.C. Gen. Stat. § 1-253 provides that the complainant is entitled to a declaration, even if no monetary relief is available. This declaration may be resolved as a question of law under Rule 55.

## B. Equal Protection

**[3]** Plaintiffs next contend that they have "adequately alleged facts to support their claim for violations of Article I, Section 19 of the North Carolina Constitution." Plaintiffs assert that because the SPC's regulatory framework "clearly is intended" to prevent employees from working for periods exceeding twelve months without receiving benefits, defendants' failure to adopt a uniform policy applicable to all employees violates the equal protection guarantees of the North Carolina Constitution. Specifically, plaintiffs argue that they are "similarly situated" to employees in permanent or permanent time-limited appointments, because they worked for more than twelve months, and that by not being given the status and benefits of permanent employees, they were subjected "arbitrarily and capriciously" to "differential treatment."

Our assessment of plaintiffs' contentions that they were denied certain constitutional rights is predicated by two well-settled principles. First, a state constitution is not a grant of power, all power not limited by a constitution belongs to the people, and an act of a state legislature is legal when the constitution does not prohibit it. *Marks v. Thompson*, 282 N.C. 174, 182, 192 S.E.2d 311, 316 (1972). Second, we presume that an act passed by the legislature is constitutional unless it conflicts with some constitutional provision. *Marks*, 282 N.C. at 182, 192 S.E.2d at 317.

"Article I, Section 19 of the North Carolina Constitution guarantees both due process rights and equal protection under the law by providing that no person shall be 'deprived of his life, liberty, or property, but by the law of the land' and that '[n]o person shall be denied the equal protection of the laws.' " *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) (quoting N.C. Const. art. I, § 19). Upon the challenge of a statute as violating the Equal Protection Clause, we apply a rational basis test if the statute impacts neither a fundamental right nor a suspect class. *Richardson v. N.C. Dept. of Correction*, 345 N.C. 128, 134, 478 S.E.2d 501, 505 (1996). When there is no suspect class or fundamental right, the equal protection clause is satisfied if the classification provided by the legislature "could provide a reasonable means to a legitimate state objective." *Powe v. Odell*, 312 N.C. 410, 412, 322 S.E.2d 762, 763 (1984). In *Rhyne v. K-Mart Corp.*, our Supreme Court explained that a rational basis review requires " 'a plausible policy reason for the classification,' " pertinent legislative facts that " 'rationally may have been considered to be true by the governmental decisionmaker,' " and a " 'relationship

of the classification to its goal' " that is " 'not so attenuated as to render the distinction arbitrary or irrational.' " 358 N.C. 160, 180-81, 594 S.E.2d 1, 15 (2004) (quoting *Texfi Indus., Inc. v. City of Fayetteville*, 301 N.C. 1, 11, 269 S.E.2d 142, 149 (1980)).

The Administrative Code of North Carolina's Office of State Personnel expressly authorizes differential employee appointments including, for example, permanent, time-limited permanent, and temporary. 25 NCAC 1C.0402, 1C.0405. Because plaintiffs here are not mounting a facial challenge to the classifications within the regulatory scheme, we presume "that this differential treatment, permitted by statutes duly enacted by the General Assembly, [has] a rational, rather than arbitrary, basis." *Lea v. Grier*, 156 N.C. App. 503, 510, 577 S.E.2d 411, 417 (2003). Under the rational basis test, plaintiffs have the difficult burden of showing that there is no governmental justification for defendants' actions in granting benefits only to persons with permanent appointments. This, they have failed to do.

Many possible and valid reasons exist for defendants' actions in granting benefits only to those employees who hold permanent appointments. First, the SPC's responsibility for the rules and regulations governing the appointments is constrained by the legislature. *See* N.C. Gen. Stat. §§ 126-4(1) through 126-4(3). As defendants point out, the SPC during the time relevant to this case "could neither create a new position without authorization nor pay benefits without funds from which such payments would be authorized." *See* N.C. Gen. Stat. § 143-34.1(a), (b) (2005) (repealed eff. July 1, 2007); *see also* N.C. Gen. Stat. § 143C-6-6 (2007) for subsequent similar provisions. Another reason that temporary employees who were in positions longer than twelve months might not automatically become permanent employees is the need to select permanent candidates on a competitive basis. Thus, by not creating new, permanent positions without authorization, defendants pursued a "reasonable means to a legitimate state objective." *See Powe*, 312 N.C. at 412, 322 S.E.2d at 763. Likewise, placing employees in permanent positions through a competitive selection process, rather than by automatically turning temporary positions into permanent positions, provides "a plausible policy reason for the classification" that is "not so attenuated as to render the distinction arbitrary or irrational." *See Rhyne*, 358 N.C. at 181, 594 S.E.2d at 15.

Based on the foregoing rational basis analysis, we hold that plaintiffs failed to state a claim under the equal protection clause of the North Carolina Constitution. Accordingly, we affirm the trial court's

dismissal of plaintiffs' equal protection claims under Article I, Section 19 of the North Carolina Constitution.

## C.  Fruits of their Labor

[4] Finally, plaintiffs contend that, pursuant to Article I, Sections 1 and 35 of the North Carolina Constitution, their complaint adequately "allege[d] facts showing that defendants [sic] arbitrary and capricious treatment [] deprived plaintiffs of the fruits of their own labors." Plaintiffs assert that by "continuing to treat Plaintiffs and class members as temporary employees," defendants "den[ied] them benefits" and "deprived them of the enjoyment of 'the fruits of their own labor.' "

Article I, Section 1 of the North Carolina Constitution establishes that the inalienable rights of the people include "life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness." The test used to interpret the validity of state regulation of business under Article I, Section 1 is the same as that used under the analysis articulated above for an equal protection claim. *See Treants Enterprises, Inc. v. Onslow County,* 320 N.C. 776, 778-79, 360 S.E.2d 783, 785 (1987) ("A single standard determines whether the [regulation] passes constitutional muster imposed by both section 1 and the 'law of the land' clause of section 19: the [regulation] must be rationally related to a substantial government purpose.").

Prior cases have considered this constitutional provision. In *Real Estate Licensing Board v. Aikens,* for example, we explained that "fundamental provisions" of our state constitution, including Article I, Section 1, "guarantee the right to pursue ordinary and simple occupations free from governmental regulation." 31 N.C. App. 8, 13, 228 S.E.2d 493, 496 (1976) (citing *State v. Warren,* 252 N.C. 690, 114 S.E.2d 660 (1960)). Our Supreme Court in *Roller v. Allen* found a violation of the provision when the North Carolina Licensing Board for Tile Contractors imposed a licensing requirement for installing tile, which the Court said "create[d] a monopoly in a trade designed by the framers of the Constitution to be free from legislative control." 245 N.C. 516, 526, 96 S.E.2d 851, 859 (1957). These cases make it clear that Article I, Section 1 is intended to be a check against the government's excessive regulation of business affairs.

The regulations at issue here do not exhibit a situation in which the legislature is interfering with an "ordinary and simple occupation," nor is the employment scheme intended to be "free from gov-

ernmental regulation." *See Real Estate Licensing Board,* 31 N.C. App. at 13, 228 S.E.2d at 496. In fact, it is a legislatively mandated, SPC regulated employment scheme that is meant to delineate State employees and their appointments. We hold that such regulation is rationally related to a substantial governmental interest. Thus, while we agree with plaintiffs' assertions that the "fruits of their labor" provision protects their "right to earn a livelihood," and that we should invalidate "governmental actions that irrationally and arbitrarily place limits on that right," we hold that nothing in the governmental action at issue has arbitrarily or irrationally limited plaintiffs' rights to earn a livelihood. Plaintiffs have not been barred from earning a living, denied pay for their employment, or deprived of bargained-for benefits. In an attempt to distinguish this claim, plaintiffs explain: "Again, Plaintiffs are not claiming they were treated differently from other 'temporary' employees; Plaintiffs claim they were similarly situated with and treated differently from other 'permanent' employees." Notwithstanding plaintiffs' attempt, we consider this "fruits of their own labor" claim to be substantively indistinguishable from their equal protection claim and hold that it, too, fails to state a claim for relief. We affirm the trial court, which stated that "there were no allegations that would support a finding that their classification as 'temporary' employees was arbitrary, capricious, or without a rational basis."

As to plaintiffs' claim pursuant to Article I, Section 35, they merely quote that it is necessary " 'to preserve the blessings of liberty.' " Because they allege no specific violation of rights, they state no claim upon which relief may be granted. Based on the foregoing analysis, we affirm the trial court's dismissal of plaintiffs' claims under Article I, Sections 1 and 35.

### V. Conclusion

For the foregoing reasons, we reverse as to the trial court's dismissal of plaintiffs' breach of contract claim and remand. We affirm as to the trial court's dismissal of plaintiffs' claims pursuant to Article I, Sections 1, 19, and 35.

Affirmed in part, reversed and remanded in part.

Judges HUNTER, Robert C., and CALABRIA concur.