IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-948

Filed: 18 August 2020

Ashe County, No. 18 CVS 442

JAMES H. HENDRIX, Plaintiff

v.

TOWN OF WEST JEFFERSON; c/o BRANTLEY PRICE, town manager; MAYOR DALE BALDWIN (in his official capacity); ALDERMEN (in their official capacities) BRETT SUMMEY, STEPHEN SHOEMAKER, JOHN REEVES, JERRY MCMILLIAN, CALVIN GREENE, Defendants

Appeal by Plaintiff from Order entered 17 June 2019 by Judge Edwin Wilson, Jr. in Ashe County Superior Court. Heard in the Court of Appeals 17 March 2020.

*James H. Hendrix, plaintiff-appellant, pro se.*

*Cranfill Sumner & Hartzog LLP, by Ryan D. Bolick, for defendants-appellees.*

HAMPSON, Judge.

**Factual and Procedural Background**

James H. Hendrix (Plaintiff) appeals from an Order entered on 17 June 2019, dismissing with prejudice, under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, Plaintiff's Defamation Claim against the Town of West Jefferson (Town); Brantley Price, Town Manager of West Jefferson, in his official capacity; Dale Baldwin, Mayor of West Jefferson, in his official capacity; and Aldermen Brett Summey, Stephen Shoemaker, John Reeves, Jerry McMillian, and Calvin Greene, in their official capacities (collectively, Defendants). The Record before us—including

the allegations in Plaintiff's Complaint, which we take as true for purposes of reviewing an order on a motion to dismiss pursuant to Rule 12(b)(6), see *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 442, 666 S.E.2d 107, 114 (2008) (citation omitted)—tends to show the following:

From 1993 to 1997, Plaintiff was employed by the Town as a police officer for the West Jefferson Police Department (WJPD). After leaving WJPD, and through the filing of his Complaint, Plaintiff was employed in leadership roles in both the law enforcement and security fields.

In November of 2016, the Ashe County Sheriff resigned, requiring the Ashe County Board of Commissioners (County Board) to appoint another person to serve out the rest of the resigning-Sheriff's term. At the time, the Chief of Police for WJPD was Jeffery Rose (Chief Rose). Chief Rose also served as a County Commissioner on the County Board. Gary Roark (Roark) was another County Commissioner on the County Board.

After learning of the then-Sheriff's resignation, Plaintiff expressed interest in being considered for the County Sheriff position to Roark, who conveyed this information to Chief Rose. On 30 December 2016, Chief Rose and another candidate for the County Sheriff position, allegedly Terry Buchanan (Buchanan), engaged in the following text-message exchange:

Person 1: "It's unfortunate to see [Plaintiff] supporting Bucky and the status quo. I believe he knows if I'm appointed he won't have a shot in two years."

Chief Rose: "That is true. I don't think he would anyway. Because I could not vote for him."

Person 1: "He has never had anything good to say about them so why he felt the need them [sic] is strange to say the least."

Person 1: "I would just like to see conservatives support each."

Chief Rose: "Me too and yes he talks about how screwed up they are. I think just trying to play politics."

Chief Rose: "[Roark] said [Plaintiff] asked him about being selected. I told [Roark] no way is he getting my vote."

Chief Rose: "[Plaintiff is in] the crowd that got gone from [WJPD], For the evidence being used and smoked."

The County Board eventually appointed Buchanan as Sheriff of Ashe County. In April of 2017, a television station in Charlotte filed a public-records request with the County Board, seeking all written communications, including text messages and emails, between the Commissioners of the County Board and Buchanan. Subsequently, on 13 December 2017, the text-message exchange above was published in the *Ashe Post and Times* and again republished on 17 December 2017.

On 14 December 2018, Plaintiff filed his Complaint in the current action, asserting a Defamation Claim against Defendants.[1] Plaintiff alleged Chief Rose's

---

[1] Chief Rose is not a party to this action; rather, Plaintiff alleged he served Chief Rose with a separate action for defamation on 2 October 2018.

text—"[Plaintiff is in] the crowd that got gone from [WJPD], For the evidence being used and smoked"—was defamatory and caused Plaintiff to "suffer personal humiliation, mental anguish and suffering." In Paragraphs 24 through 28 of his Complaint, Plaintiff alleged Defendants were liable for Chief Rose's defamatory statement for the following reasons:

24. The Defendant(s) have employed Chief Rose as the Chief of Police for the Town of West Jefferson. Chief Rose is responsible for the day to day operations of the Police Department as well as being the spokesman for the WJPD when matters of law enforcement issues arise. His statements carry significant weight as he is the top law enforcement officer in his jurisdiction. As such, statements that he makes would lead a reasonable person to conclude that the statements are true and that they have been condoned and approved for release by the Defendant(s).

25. The Defendant(s) knew or should have known that about the statements Chief Rose made about the Plaintiff in the December 17, 2017 Ashe Post and Times article. A quick search of the Plaintiff's record by the Defendant(s) would have shown the statement to be patently false.

26. The Defendant(s) had a fiduciary responsibility to the Plaintiff to ensure matters concerning his prior employment for the Defendant(s) be kept private, confidential and factual.

27. The Defendant(s), upon discovery of the libelous and defamatory statements, had a duty to immediately correct the false statement by releasing a statement correcting the record and then requesting their Police Chief, Chief Rose to issue a retraction concerning the false statement. The Defendant(s) failed to do so, even though the statements pertained directly to the Plaintiff's employment with the WJPD.

28. The Plaintiff is not a public official or figure and therefore the Defendant(s) is strictly liable for the Defamation Per Se that has resulted in the impairment of the Plaintiff's reputation and standing in the community, and caused him to suffer personal humiliation, mental anguish and suffering.

On 19 February 2019, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, seeking dismissal of Plaintiff's Complaint because "Plaintiff fails to allege facts that support claims for defamation against these Defendants and failed to file the complaint within the applicable statute of limitations." The trial court held a hearing on Defendants' Motion to Dismiss on 10 June 2019. At this hearing, Defendants argued dismissal of the Complaint was warranted because Plaintiff did not allege any of the Defendants had themselves made a defamatory statement against Plaintiff and, more to the point, Plaintiff had failed to sufficiently allege facts to state a defamation cause of action against Defendants under a theory of respondeat superior. Specifically, Defendants contended Plaintiff's allegations were insufficient to establish respondeat superior liability because there was no allegation: (a) Chief Rose made the statement with Defendants' express authorization; (b) Chief Rose was acting in the course and scope of his employment with WJPD when he made the statement; or (c) Defendants had otherwise ratified the statement. Defendants also briefly asserted Plaintiff's Complaint was barred by the applicable statute of limitations.

For his part, Plaintiff acknowledged his Complaint did not expressly allege Chief Rose was acting in the course and scope of his employment. Instead, Plaintiff argued he had "tried to spell out Chief Rose's chief duties while attempting to equate that to his course and scope of employment."

The trial court orally granted Defendants' Motion to Dismiss, and on 17 June 2019, the trial court entered its Order granting Defendants' Motion to Dismiss under Rule 12(b)(6). In its Order, the trial court concluded Plaintiff's Complaint failed to state a claim upon which relief may be granted. On 19 June 2019, Plaintiff filed timely Notice of Appeal from the trial court's Order.

## Issue

The dispositive issue on appeal is whether the allegations in Plaintiff's Complaint are legally sufficient to state a claim for defamation against Defendants to survive a dismissal under Rule 12(b)(6) under the theories Chief Rose made the allegedly defamatory statement in the course and scope of his employment or, alternatively, Defendants ratified Chief Rose's statement.

## Analysis

### I. Standard of Review

On appeal of a Rule 12(b)(6) motion to dismiss, this Court conducts "a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest*

*Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673-74 (2003); *see also Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) ("Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." (citation and quotation marks omitted)). This Court views the allegations in the complaint in the light most favorable to the non-moving party. *Donovan v. Fiumara*, 114 N.C. App. 524, 526, 442 S.E.2d 572, 574 (1994) (citation omitted). Further, this Court considers "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citation omitted).

"In order to withstand such a motion, the complaint must provide sufficient notice of the events and circumstances from which the claim arises and must state sufficient allegations to satisfy the substantive elements of at least some recognized claim." *Sanders v. State Personnel Comm'n*, 197 N.C. App. 314, 319, 677 S.E.2d 182, 186 (2009) (citation omitted). "[D]espite the liberal nature of the concept of notice pleading, [however,] a complaint must nonetheless state enough to give the substantive elements of at least some legally recognized claim or it is subject to dismissal under Rule 12(b)(6)." *Stanback v. Stanback*, 297 N.C. 181, 204, 254 S.E.2d 611, 626 (1979) (citation omitted); *see also Leasing Corp. v. Miller*, 45 N.C. App. 400,

405, 263 S.E.2d 313, 317 (1980) ("A claim for relief must still satisfy the requirements of the substantive laws which gave rise to the pleadings, and no amount of liberalization should seduce the pleader into failing to state enough to give the substantive elements of his claim." (citation omitted)).

## II. Plaintiff's Defamation Claim

"In order to recover for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Craven v. SEIU Cope*, 188 N.C. App. 814, 816, 656 S.E.2d 729, 732 (2008) (citation and quotation marks omitted). Furthermore, as Plaintiff correctly points out, our Courts have long recognized circumstances under which an employer may be held vicariously liable for defamatory statements made by an employee. *See Gillis v. Tea Co.*, 223 N.C. 470, 474-75, 27 S.E.2d 283, 286 (1943) ("The principle that the employer is to be held liable for the torts of his employee when done by his authority, express or implied, or when they are within the course and scope of the employee's authority, is equally applicable to actions for slander." (citations omitted)).

In his Complaint, Plaintiff alleged the text message by Chief Rose, which was published in the *Ashe Post and Times*, was a false, defamatory statement about Plaintiff because it falsely accused him of stealing and smoking evidence while working for WJPD and this statement injured him by impairing his reputation and

causing him to suffer personal humiliation and mental anguish. Presuming Plaintiff's allegations are sufficient to allege a defamatory statement by Chief Rose—again, not a party to this action—the question becomes whether Plaintiff's allegations are sufficient to state a claim against Defendants arising from the Town's employment of Chief Rose.[2]

"Generally, employers are liable for torts committed by their employees who are acting within the scope of their employment under the theory of respondeat superior." *Matthews v. Food Lion, LLC*, 205 N.C. App. 279, 281, 695 S.E.2d 828, 830 (2010) (citation omitted). "As a general rule, liability of a principal for the torts of its agent may arise in three situations: (1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business[;] or (3) when the agent's act is ratified by the principal." *Id*. at 281-82, 695 S.E.2d at 830 (citation omitted).[3] In this case, Plaintiff does not contend Defendants expressly authorized Chief Rose's allegedly defamatory statement; rather, he argues his Complaint should be read to state a claim against Defendants on the basis Chief Rose was acting within the course

---

[2] No party raises the issue of government immunity, and we therefore do not address this issue.

[3] A more technical formulation of employer liability limits application of the term "respondeat superior" only to those situations in which an employee is acting within the course and scope of employment. Under this more technical formulation, ratification and authorization still may give rise to employee liability but are simply deemed to arise from traditional agency principles. *See Creel v. N.C. Dep't of Health & Human Servs.*, 152 N.C. App. 200, 202-03, 566 S.E.2d 832, 833 (2002) (citations omitted). For our purposes, however, this distinction is not determinative here, and so, we apply a broader brushstroke.

and scope of his employment or, alternatively, on the basis Defendants ratified Chief Rose's statement.

First, however, as Plaintiff conceded in the trial court, his Complaint does not contain any allegation Chief Rose was acting in the course and scope of his employment when Chief Rose made the allegedly defamatory statement. *See Matthews*, 205 N.C. App. at 281, 695 S.E.2d at 830 ("Generally, employers are liable for torts committed by their employees who are acting *within the scope of their employment* under the theory of respondeat superior." (emphasis added) (citation omitted)); *see also Sanders*, 197 N.C. App. at 319, 677 S.E.2d at 186 (holding to withstand a motion to dismiss, the complaint "must state sufficient allegations to satisfy the substantive elements of at least some recognized claim" (citation omitted)).

Second, our Court has explained: "To be within the scope of employment, an employee, at the time of the incident, must be acting in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment." *Troxler v. Charter Mandala Center*, 89 N.C. App. 268, 271, 365 S.E.2d 665, 668 (1988) (citation omitted). "If an employee departs from that purpose to accomplish a purpose of his own, the principal is not [vicariously] liable." *Id.* (citation omitted); *see also BDM Invest. v. Lenhil, Inc.*, ___ N.C. App. ___, ___, 826 S.E.2d 746, 764 (2019) (explaining "liability is not imposed on an employer when an employee engaged in

some private matter of his own or outside the legitimate scope of his employment" (citation and quotation marks omitted)).

Here, Plaintiff's allegations establish Chief Rose made the statement regarding the circumstances under which Plaintiff's employment with WJPD ended not in the context of Town or WJPD business but rather in the context of his support of a candidate for the appointment of a new County Sheriff by the County Board, on which Chief Rose served. As such, on its face, Plaintiff's Complaint shows Chief Rose's allegedly defamatory text message was not "within the scope of his employment" because he was "engaged in some private matter of his own [and] outside the legitimate scope of his employment[.]" *BDM Invest.*, ___ N.C. App. at ___, 826 S.E.2d at 764 (alteration in original) (citations and quotation marks omitted). Therefore, where the purpose of Chief Rose's defamatory statement was "to accomplish a purpose of his own, the [Defendants are] not [vicariously] liable." *Troxler*, 89 N.C. App. at 271, 365 S.E.2d at 668 (citation omitted).

Moreover, our courts have previously held statements made by an employee regarding a plaintiff's discharge from employment after the plaintiff has been discharged are not made within the course and scope of the employment and are not attributable to the employer. Indeed, close to a century ago and relying on even earlier cases, our Supreme Court in *Strickland v. Kress* explained, "owing to the facility and thoughtless way that such words are not infrequently used by employees,

they should not, perhaps, be imported to the company as readily as in more deliberate circumstances; that is, they should not be so readily considered as being within the scope of the agent's employment." 183 N.C. 534, 537, 112 S.E. 30, 31 (1922). In that case, after a store manager fired the plaintiff, the plaintiff's husband asked the manager for an explanation, leading to the manager's defamatory statements, which were overheard by other employees. *Id.* at 538, 112 S.E. at 31. The Supreme Court characterized the incident: "This was clearly a conversation between the two individuals as to an event that had passed, and, as stated, could in no sense be considered as within the course and scope of [the manager's] employment, or as an utterance by authority of the company, either express or implied." *Id*. at 538, 112 S.E. at 31-32.

More recently, our Court has recognized the same principle on at least two occasions. In *Stutts v. Power Co.*, after the plaintiff's discharge, a Duke Power employee made statements the plaintiff was terminated from Duke Power for dishonesty, including falsifying records. 47 N.C. App. 76, 80, 266 S.E.2d 861, 864 (1980). The plaintiff argued the issue of Duke Power's liability for its employee's defamation should be submitted to the jury. *Id.* at 81, 266 S.E.2d at 865. Our Court relied on *Strickland* to hold: "any remarks made by [the employee] in the months after [the] plaintiff's discharge, were, as a matter of law, not made within [the employee's] scope of employment and, consequently, not attributable to Duke Power."

*Id.* Then, in *Gibson v. Mutual Life Insurance Co. of New York*, our Court again concluded statements made about a plaintiff after the plaintiff's termination could not be imputed to the corporate defendant. 121 N.C. App. 284, 288, 465 S.E.2d 56, 59 (1996) ("[A]ll of the statements were made after [the] plaintiff was terminated and therefore, the alleged defamation cannot be imputed to [the corporate defendant]." (citation omitted)). Consequently, in light of this prior precedent, in this case, Plaintiff's allegations of Chief Rose's allegedly defamatory statement made years after Plaintiff's separation from employment with WJPD cannot serve as a basis for the vicarious liability of Defendants because, as a matter of law, this statement was not made in the course and scope of Chief Rose's employment by the Town.

Likewise, Plaintiff's argument he should be permitted to proceed against Defendants on the theory Defendants allegedly ratified Chief Rose's statement also fails. Ratification is "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Espinosa v. Martin*, 135 N.C. App. 305, 308, 520 S.E.2d 108, 111 (1999) (citations and quotation marks omitted). Again, Plaintiff's Complaint does not expressly invoke ratification but rather appears to rest on his allegations Defendants owed him a "fiduciary responsibility," including the duty to investigate the truth of Chief Rose's statement and to require a correction or retraction of this statement addressing Chief Rose's

opposition to Plaintiff's candidacy for County Sheriff. Plaintiff, however, offers no authority to support the existence of such a duty. Further, the earlier precedent set by *Strickland, Stutts,* and *Gibson, supra,* runs counter to the existence of such a duty. *See, e.g.*, *Strickland*, 183 N.C. at 538, 112 S.E. at 32 (holding statement "could in no sense be considered . . . as an utterance by authority of the company, either express or implied"). Thus, Plaintiff has not alleged any act by Chief Rose "done or professedly done" on Defendants' account. *Espinoza*, 135 N.C. App. at 308, 520 S.E.2d at 111 (citations and quotation marks omitted).

Additionally, ratification requires "(1) that at the time of the act relied upon, the principal had full knowledge of all material facts relative to the unauthorized transaction, and (2) that the principal had signified his assent or his intent to ratify by word or by conduct which was inconsistent with an intent not to ratify." *Equipment Co. v. Anders*, 265 N.C. 393, 400-01, 144 S.E.2d 252, 258 (1965) (citations omitted). A failure to act or investigate may provide evidence of an employer's ratification of an employee's wrongful act. *See Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 437, 378 S.E.2d 232, 236 (1989) (recognizing "an omission to act" in some circumstances may constitute a "course of conduct on the part of the principal which reasonably tends to show an intention on his part to ratify the agent's unauthorized acts" (citation and quotation marks omitted)). However, here, in light of our prior caselaw holding statements similar to the one made by Chief Rose outside

the course and scope of his employment are not attributable to an employer, and absent any independent duty to investigate or correct the statement, it follows the employer's failure to investigate or correct those statements is not conduct inconsistent with an intent not to ratify. As such, Plaintiff's Complaint is legally insufficient to allege Defendants should be held liable on the basis of ratification.

Thus, Plaintiff's Complaint fails to state a claim against Defendants for defamation based on Chief Rose's statement either under a theory Chief Rose was acting in the course and scope of his employment or that Defendants ratified Chief Rose's statement. Consequently, the trial court did not err in granting Defendants' Motion to Dismiss under Rule 12(b)(6).

## <u>Conclusion</u>

Accordingly, for the foregoing reasons, we affirm the trial court's Order granting Defendants' Motion to Dismiss.

AFFIRMED.

Judges STROUD and DIETZ concur.