-1-

NO. COA13-654

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014


LULA SANDERS, CYNTHIA EURE,
ANGELINE MCINERNY, JOSEPH C.
MOBLEY, on behalf of themselves
and others similarly situated,

     Plaintiffs,

    v.                        Wake County
                             No. 05-CVS-004322

STATE PERSONNEL COMMISSION, a body
politic; OFFICE OF STATE
PERSONNEL, a body politic; LINDA
COLEMAN, State Personnel Director
(in her official capacity);
TEACHERS' AND STATE EMPLOYEES'
RETIREMENT SYSTEM OF NORTH
CAROLINA, a body politic and
corporate; MICHAEL WILLIAMSON,
Director of the Retirement System
Division and Deputy Treasurer of
the State of North Carolina (in
his official capacity); JANET
COWELL, Treasurer of The State of
North Carolina and Chairman of The
Board of Trustees of the
Retirement System (in her official
capacity); TEMPORARY SOLUTIONS, a
subdivision of the Office of State
Personnel, and STATE OF NORTH
CAROLINA,

     Defendants.

Appeal by Plaintiffs from order entered 18 December 2012 by Judge Kenneth C. Titus in Wake County Superior Court. Heard in the Court of Appeals 12 December 2013.

*Kilpatrick Townsend & Stockton LLP, by Adam H. Charnes, James H. Kelly, Jr., Susan H. Boyles, Richard D. Dietz, and Gregg E. McDougal, and North Carolina Justice Center, by Jack Holtzman, for Plaintiffs.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Lars F. Nance and Special Deputy Attorney General Charles Gibson Whitehead, for Defendants.*

*State Employees Association of North Carolina, by Thomas A. Harris, amicus curiae.*

DILLON, Judge.

This case was commenced in 2005 and has been on appeal before this Court twice previously. *See Sanders v. State Personnel Comm'n*, 183 N.C. App. 15, 644 S.E.2d 10 ("*Sanders I*"), *disc. review denied*, 361 N.C. 696, 652 S.E.2d 653 (2007); and *Sanders v. State Personnel Comm'n*, 197 N.C. App. 314, 677 S.E.2d 182 (2009) ("*Sanders II*"), *disc. review denied*, 363 N.C. 806, 691 S.E.2d 19 (2010).

In the present appeal, Plaintiffs Lula Sanders, *et al.* ("Plaintiffs") challenge the trial court's order denying their motion for partial summary judgment and granting summary judgment in favor of Defendants State Personnel Commission, *et*

*al.* ("Defendants"). Defendants, on the other hand, have filed a cross-appeal, challenging the trial court's award of costs, including attorneys' fees, in Plaintiffs' favor. For the following reasons, we affirm the trial court's order denying Plaintiffs' motion for partial summary judgment and granting Defendants' motion for summary judgment, and we affirm in part and dismiss in part the issues raised in Defendants' cross-appeal.

## I. Factual & Procedural Background

Pursuant to its authority under the State Personnel Act, N.C. Gen. Stat. § 126-4 (2013), the State Personnel Commission (the "Commission") has promulgated regulations establishing various types of appointments through which an individual may gain employment with the State of North Carolina. *See* 25 N.C.A.C. 1C.0400, *et seq.* For example, some individuals are hired as permanent employees with the State through a permanent appointment, *see* 25 N.C.A.C. 1C.0402, and others are hired as temporary employees through a temporary appointment, *see* 25 N.C.A.C. 1C.0405.

There are two differences between temporary employees and permanent employees which are relevant to this case. First, while under the regulations the period of employment for a

permanent employee is indefinite, the regulations stipulate that a person may not be employed as a temporary employee for a period "exceed[ing] 12 consecutive months" (hereinafter, the "Twelve-Month Rule"). 25 N.C.A.C. 1C.0405(a). The second difference is that temporary employees are not eligible to receive certain benefits available to permanent employees, such as leave time, state service credit, health benefits, retirement credit, severance pay, or priority reemployment consideration. 25 N.C.A.C. 1C.0405(b).

Each Plaintiff was employed by the State of North Carolina as a temporary employee for a period exceeding twelve consecutive months, in violation of the Twelve-Month Rule. Plaintiffs commenced this action, alleging that because they had been employed as temporary employees for more than twelve consecutive months – in violation of the Twelve-Month Rule – they were entitled to the "rights, compensation, benefits, and status" of permanent employees. Plaintiffs alleged claims for (1) violations of the North Carolina Administrative Code; (2) violations of the North Carolina Constitution; and (3) breach of contract. Based on these claims, Plaintiffs prayed for relief in the form of monetary damages and costs, including attorneys' fees, in addition to declaratory relief. Plaintiffs also sought

class certification for inclusion of all similarly-situated individuals, i.e., those who had been employed by the State as temporary employees for more than twelve consecutive months.

Defendants responded by moving to dismiss Plaintiffs' claims for lack of personal jurisdiction pursuant to N.C. R. Civ. P. 12(b)(2) on grounds of Defendants' sovereign immunity, and pursuant to N.C. R. Civ. P. 12(b)(6) for failure to state a claim for which relief could be granted. In *Sanders I*, we affirmed the trial court's Rule 12(b)(2) dismissal of Plaintiffs' claim based on violations of the North Carolina Administrative Code. 183 N.C. App. at 24, 644 S.E.2d at 16. In *Sanders II*, we affirmed the trial court's Rule 12(b)(6) dismissal of Plaintiffs' constitutional claims; however, we reversed the trial court's dismissal of Plaintiffs' breach of contract claim and remanded the matter "for a declaratory judgment, to declare plaintiffs' status and rights pursuant to the Uniform Declaratory Judgment Act." 197 N.C. App. at 323, 677 S.E.2d at 189. In analyzing Plaintiffs' breach of contract claim, we determined that the Twelve-Month Rule and the other "relevant regulations of the [Commission]" are part of Plaintiffs' employment contracts with Defendants, *id.* at 320-21, 677 S.E.2d at 187, noting as follows:

> There is an agreement between the parties
> whose term is known and agreed. What is
> unknown is what are the legal relationships
> and status of the parties when the contract
> continues in effect after the expiration of
> the agreed upon terms.

*Id.* Accordingly, we instructed the trial court on remand to determine the legal relationship between the parties, including the precise terms of Plaintiffs' employment with Defendants as of the "twelve month and one day mark and beyond." *Id.* at 323, 677 S.E.2d at 188.

On remand from *Sanders II*, the parties engaged in extensive discovery regarding Plaintiffs' breach of contract claim, after which Plaintiffs filed motions seeking partial summary judgment on this claim; a declaratory judgment construing their rights under the contract pursuant to N.C. Gen. Stat. § 1-253; and class action certification. Defendants likewise moved for summary judgment with respect to Plaintiffs' breach of contract claim.

Following a hearing on these matters, the trial court entered an order on 18 December 2012 granting relief to both Plaintiffs and Defendants. Specifically, the trial court declared that Plaintiffs' status as temporary employees did not convert to that of permanent employees after twelve months and that they were entitled only to the wages for which they had

bargained and already received for the period that they had worked as temporary employees beyond the permissible twelve-month period. Accordingly, the trial court granted Defendants' motion for summary judgment on Plaintiffs' breach of contract claim and denied Plaintiffs' motions for partial summary judgment and for class certification.

The trial court, however, also granted Plaintiffs certain relief; namely, the court enjoined Defendants from future violations of the Twelve-Month Rule; it directed the State Personnel Director and the Office of State Personnel to present to the trial court "a comprehensive plan [hereinafter, the "Comprehensive Plan"] to assure full compliance with the mandates of North Carolina General Statutes 126-3(b)(8) and (9)[;]" and it taxed Defendants "with the costs of this action, including attorney fees as provided by law [hereinafter, "Attorneys' Fees Award"]."

In the present appeal, Plaintiffs seek review of the trial court's order granting Defendants' motion for summary judgment and denying their motions for partial summary judgment and for class certification. In Defendants' cross-appeal, Defendants seek review of the trial court's Attorneys' Fees Award.

II. Jurisdiction

The threshold issue presented is whether and to what extent this Court has jurisdiction over the parties' appeals. "Generally, an interlocutory order is not immediately appealable." *Builders Mut. Ins. Co. v. Meeting Street Builders, LLC*, __ N.C. App. __, __, 736 S.E.2d 197, 199 (2012). An order is interlocutory where it "does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950). A party may immediately appeal from an interlocutory order, however, where the issue has been certified by the trial court for immediate appellate review pursuant to N.C. R. Civ. P. 54(b) **or** where the interlocutory order "deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994) (internal citations omitted).

In the present case, the trial court order resolves the entire controversy except with respect to two matters. First, although the trial court has entered the Attorneys' Fees Award, the court has not yet determined the amount of the Award. Second, further action is required with respect to the

Comprehensive Plan, which the trial court has ordered certain Defendants to prepare and present to the court for review.

Our Supreme Court has held that "[a]n order that completely decides the merits of an action [] constitutes a final judgment for purposes of appeal even when the trial court reserves for later determination collateral issues *such as attorney's fees and costs*." *Duncan v. Duncan*, 366 N.C. 544, 546, 742 S.E.2d 799, 801 (2013) (emphasis added). Therefore, while our Supreme Court considers the Attorneys' Fees Award a "collateral issue," it is unclear whether the presentation and review of the Comprehensive Plan also constitutes a "collateral issue." Notwithstanding, the trial court has certified the issues raised in Plaintiffs' appeal for immediate appellate review. Accordingly, we have jurisdiction to address the issues raised in Plaintiffs' appeal.

Regarding Defendants' cross-appeal, Defendants are not challenging the trial court's injunction prohibiting future violations of the Twelve-Month Rule or the directive to present the Comprehensive Plan to the court. Accordingly, we do not address the propriety of those portions of the order. Rather, Defendants only challenge the "collateral issue" of the "Attorneys' Fees Award." In that the trial court left open for

future determination the *amount* Defendants would be taxed, Defendants' appeal of this collateral issue is interlocutory.[1] Since the trial court did not certify the Attorneys' Fees Award issue for immediate appellate review, Defendants may challenge the Attorneys' Fees Award in this appeal only to the extent that the Award affects a substantial right.

Defendants make a number of arguments in their brief challenging the Attorneys' Fees Award; however, their only argument based on a substantial right is their contention that the award is "in derogation of [Defendants'] sovereign immunity." *See McClennahan v. N.C. Sch. of the Arts*, 177 N.C. App. 806, 808, 630 S.E.2d 197, 199 (2006) (holding that "appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to immediate appellate review"), *disc. review denied*, 361 N.C. 220, 642 S.E.2d 443 (2007). Accordingly, we review Defendants' appeal of the Attorneys' Fees Award only to the extent that their challenge is based on sovereign immunity; however, we dismiss Defendants' appeal to

---

[1] Under *Duncan*, an unresolved collateral issue does not render a judgment or order deciding the main issues interlocutory. However, an appeal of the collateral issue of attorney fees, itself, is interlocutory if the trial court has not set the amount to be awarded.

the extent that Defendants' challenge is based on some other defense or upon the merits.

### III. Analysis

We address the issues raised in Plaintiffs' appeal and the issue raised in Defendants' appeal, in turn, below.

### A. Plaintiffs' Appeal

Plaintiffs essentially make two arguments on appeal: (1) the trial court erred in granting Defendants' motion for summary judgment with respect to Plaintiffs' breach of contract claim; and (2) the trial court erred in denying Plaintiffs' motion for class certification. For the following reasons, we affirm the trial court's rulings on these issues.

### 1. Summary Judgment

In their complaint, Plaintiffs alleged that Defendants had breached their employment agreements by failing to provide Plaintiffs, after twelve months of service, with the benefits generally provided to permanent employees. Plaintiffs contend that the trial court's order granting Defendants' summary judgment motion on Plaintiffs' breach of contract claim conflicts with our holding in *Sanders II*. Specifically, Plaintiffs argue that our prior holding in that case establishes *as a matter of law* that Defendants are liable to Plaintiffs for

breach of contract, based on Defendants' admitted violation of the Twelve-Month Rule, and all that remained was for a jury to decide the issue of damages.

Plaintiffs, however, misconstrue our holding in *Sanders II*. We did not hold in that case that the failure to adhere to the Twelve-Month Rule established Defendants' liability for breach of contract as a matter of law. We held only that the allegations in Plaintiffs' complaint were sufficient to survive Defendants' Rule 12(b)(6) motion to dismiss. *Sanders II*, 197 N.C. App. at 321, 677 S.E.2d at 187 (stating that "[b]ecause there is a breach of the rules under which the contract was formed, [P]laintiffs' complaint sufficiently alleged a breach of contract claim and should have survived [D]efendants' motion to dismiss"). The issue of whether Defendants were liable for breach of contract was not ripe for consideration at the time we decided *Sanders II*, as the issue then presented dealt only with the sufficiency of the allegations set forth in Plaintiffs' complaint.

In *Sanders II*, we instructed the trial court on remand to determine "the legal relationships and status of the parties" - including the terms of any agreements - "at the twelve month and

one day mark and beyond." *Id.* at 323, 677 S.E.2d at 188. We stated as follows:

> [I]t is clear that [P]laintiffs accepted some sort of arrangement with [D]efendants by accepting continued work and compensation, without a permanent appointment and without benefits. Whether that arrangement was discussed with [P]laintiffs individually or collectively and what [P]laintiffs understood about their status are relevant inquiries requiring further factual development.

*Id.* at 323, 677 S.E.2d at 189. On remand, the parties conducted extensive discovery, after which the trial court conducted a hearing and granted summary judgment in favor of Defendants on Plaintiffs' breach of contract claim.

We believe that the trial court correctly concluded that Defendants did not breach their employment contracts with Plaintiffs. Plaintiffs failed to produce any evidence to create a genuine issue of material fact with respect to whether Defendants had made any promises or inducements to Plaintiffs to cause them to continue their employment beyond twelve months, other than to continue paying their normal wages, which were, in fact, paid as agreed. There was no evidence presented to suggest that Defendants had represented to Plaintiffs that their employment status would convert to that of a permanent employee after twelve months of service. Furthermore, there is nothing

in the Commission rules or the relevant law that contractually obligated Defendants to treat Plaintiffs as permanent employees after twelve months of service. Indeed, we held just the opposite in *Sanders II*, stating that if the trial court were to determine on remand that Plaintiffs' employment had automatically converted to permanent status, the trial court would be "enact[ing] an employment scheme in direct contravention of the state constitution and other sections of the regulatory scheme." *Id.* at 322, 677 S.E.2d at 188; *see also Cauthen v. N.C. Dept. of Human Resources*, 112 N.C. App. 238, 242, 435 S.E.2d 81, 84 (1993) (refusing to allow an employee with a permanent appointment to achieve tenure by tacking onto her current appointment period her previous periods of temporary employment, stating that in doing so we would effectively be creating "a quasi-tenure system in temporary employment which neither the General Assembly nor the State Personnel Commission intended").

Plaintiffs, however, argue that Defendants' "breach" of the Twelve-Month Rule is sufficient to sustain their breach of contract claim, even if such breach entitles Plaintiffs only to nominal damages. We are unpersuaded. As this Court recognized in *Sanders II*, administrative regulations pertinent to a

particular contractual arrangement between the State and its employees may properly be incorporated into, and govern, a State employment contract. 197 N.C. App. at 320-21, 677 S.E.2d at 187. The State, certainly, has an obligation to the public to conduct its affairs in accordance with its own regulations. We do not believe, however, that every instance in which a regulation incorporated into a State employment contract is ignored provides the employee with a breach of contract claim against the State.

Here, Defendants ignored the Twelve Month Rule by permitting each Plaintiff to remain employed after twelve months. Likewise, each Plaintiff ignored the Twelve Month Rule by continuing to report to work beyond twelve months of employment. We do not condone Defendants' conduct in neglecting to comport with its own administrative regulations. However, we do not believe the trial court erred in granting Defendants' motion for summary judgment on Plaintiffs' breach of contract claim, where Defendants' conduct involved allowing Plaintiffs to continue working under their respective contracts when they were no longer eligible to continue performing under them -- where the uncontradicted evidence showed that Plaintiffs were compensated as agreed and where there is no law requiring

Defendants to confer any other benefit or status upon Plaintiffs after twelve months of service.

## 2. Class Certification

Plaintiffs further contend that the trial court erred in denying their motion for class certification. Our Supreme Court has held that "[t]he trial court has broad discretion in determining whether a case should proceed as a class action." *Faulkenbury v. Teachers' and State Employees' Ret. Sys. Of N.C.*, 345 N.C. 683, 699, 483 S.E.2d 422, 432 (1997). Upon review, we discern no abuse of discretion – given the circumstances presented and procedural posture of this case – in the trial court's decision to deny class certification.

## B. Defendants' Appeal

Defendants appeal from the trial court's Attorneys' Fees Award. As previously stated, since this appeal is interlocutory, we are compelled only to consider Defendants' contention that the Attorneys' Fees Award is in derogation of its sovereign immunity, which we have held affects a substantial right.

Plaintiffs argue that the Attorneys' Fees Award is appropriate because the State has waived sovereign immunity in this context under N.C. Gen. Stat. § 6-19.1, a provision which

authorizes the court to award attorneys' fees to a prevailing party "who is contesting State action pursuant to G.S. 150B-43 or any other appropriate provisions of law[.]" N.C. Gen. Stat. § 6-19.1(a). Alternatively, Plaintiffs argue that the Attorneys' Fees Award is appropriate under the Declaratory Judgment Act, N.C. Gen. Stat. § 1-263 (2013) (permitting recovery of attorneys' fees where "such award of costs [is] equitable and just"), because the Award is based upon Plaintiffs' breach of contract claims, which has already survived Defendants' sovereign immunity challenge.

The trial court's order does not specify a statutory basis for the Attorneys' Fees Award. Rather, the order merely taxes Defendants "with the costs of this action, including attorney fees as provided by law." Because the order directs only that Defendants bear Plaintiffs' attorneys' fees "as provided by law," and because the State has, in certain instances – e.g., under N.C. Gen. Stat. § 6-19.1 – waived sovereign immunity with respect to claims for attorneys' fees, we cannot at this point conclude that the trial court committed reversible error based on the State's sovereign immunity defense. We, accordingly, affirm the portion of the trial court's order imposing the Attorneys' Fees Award "as provided by law" based on the State's

contention concerning its defense of sovereign immunity, but we do not reach the merits of the State's remaining contentions on this issue, as they are not predicated upon, and do not implicate, a substantial right of the State. We note that our holding in this respect should not be construed as precluding the State from raising sovereign immunity as a defense should the trial court enter a subsequent order awarding attorneys' fees on a particular, articulated basis.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's order granting Defendants' motion for summary judgment and denying Plaintiffs' motions for partial summary judgment and for class certification.

With respect to the issues raised in Defendants' cross-appeal, we affirm the Award, in part, based on Defendants' sovereign immunity argument; and we dismiss, in part, the Defendants' arguments concerning the Award not based on sovereign immunity.

AFFIRMED IN PART; DISMISSED IN PART.

Judge STROUD concurs.

Judge HUNTER, JR. dissents in a separate opinion.

NO. COA13-654

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

LULA SANDERS, CYNTHIA EURE,
ANGELINE MCINERNY, JOSEPH C.
MOBLEY, on behalf of themselves
and others similarly situated,

    Plaintiffs,

    v.                                                    Wake County
                                                No. 05-CVS-004322

STATE PERSONNEL COMMISSION, a body
politic; OFFICE OF STATE
PERSONNEL, a body politic; LINDA
COLEMAN, State Personnel Director
(in her official capacity);
TEACHERS' AND STATE EMPLOYEES'
RETIREMENT SYSTEM OF NORTH
CAROLINA, a body politic and
corporate; MICHAEL WILLIAMSON,
Director of the Retirement System
Division and Deputy Treasurer of
the State of North Carolina (in
his official capacity); JANET
COWELL, Treasurer of The State of
North Carolina and Chairman of The
Board of Trustees of the
Retirement System (in her official
capacity); TEMPORARY SOLUTIONS, a
subdivision of the Office of State
Personnel, and STATE OF NORTH
CAROLINA,

    Defendants.


    HUNTER, JR., Robert N., Judge, dissenting.


    I dissent from the majority's opinion concerning

Plaintiffs' appeal and Defendants' appeal.  In my view,

Plaintiffs are entitled to partial summary judgment on the issue of liability for breach of contract. I would also hold that the trial court abused its discretion in denying Plaintiffs' motion for class certification. Finally, I would dismiss Defendants' appeal concerning attorneys' fees as interlocutory notwithstanding Defendants' claim of sovereign immunity. My views with respect to each appeal are addressed separately, in turn.

**A. Plaintiffs' Appeal**

**1. Summary Judgment on Plaintiffs' Breach of Contract Claim**

Despite the existence of a temporary employment contract between the parties, the incorporation of the Twelve-Month Rule as a condition of that contract, and the admitted violation of the Twelve-Month Rule by Defendants, the trial court below, and the majority here, conclude that no breach of contract has occurred and that Defendants are entitled to summary judgment as a matter of law. I respectfully dissent.

"[The] standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572,

576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)).

In *Sanders II*, this Court said that the Twelve-Month Rule "has the effect of law and is incorporated into the employment contract when employees are placed into a temporary assignment." *Sanders II*, 197 N.C. App. at 321, 677 S.E.2d at 187. Admissions by Defendants and discovery conducted below establish conclusively that Plaintiffs and thousands of additional state employees were placed in temporary appointments for more than twelve consecutive months with no change in employment status in violation of the Twelve-Month Rule. By doing so, Defendants breached an implied term of the temporary employment contract. *See id.* at 320, 677 S.E.2d at 187 (stating that "[i]n a breach of contract action, a complainant must show that there is (1) existence of a valid contract, and (2) breach of the terms of that contract." (internal quotation marks and citation omitted)). Notwithstanding the evident nature of this conclusion, the majority concludes that no breach of contract occurred and affirms summary judgment in favor of Defendants.

Although not addressed by the majority, the trial court concluded that there could have been no breach of contract because "the acts of any hiring official in violating the

[Twelve-Month Rule] . . . were clearly *ultra vires* and would not bind the State." Thus, the trial court went so far as to conclude that there was no valid contractual relationship between the parties after Plaintiffs had provided twelve months of service, resting its analysis on a defense to the contract's validity.[2] However, the trial court's *ultra vires* argument must fail.

The temporary employment contracts were not *ultra vires* when they were entered into by the parties. Indeed, to hold otherwise would be to deny Defendants the ability to initially hire anyone for a temporary appointment with the State. Rather, the contract became *ultra vires*, if at all, because of Defendants breach of the Twelve-Month Rule. In an analogous context, we have stated that, as a general matter,

> a municipality cannot be made liable for breach of an express contract for services when the official making the contract has exceeded his or her authority by entering into such a contract. And the city will not ordinarily be estopped to assert the invalidity of a contract made by an officer

---

[2] Notably, the record in this case is devoid of any contention from Defendants that the actions of their hiring officials constituted *ultra vires* activity. Defendants' answer and motion to dismiss, motion for summary judgment, hearing arguments, and brief before this Court make no mention of the *ultra vires* doctrine or its application to this case. Instead, the doctrine first appears in the trial court's order.

of limited authority when that authority has been exceeded.

*However, such a contract may become binding and enforceable upon the corporation through the doctrine of estoppel* based upon the acts or conduct of officers of the corporation having authority to enter into the contract originally, as by receiving the benefits of the contract, or other grounds of equitable estoppel. *A municipality cannot escape liability on a contract within its power to make, on the ground that the officers executing it in its behalf were not technically authorized in that regard, where they were proper officers to enter into such contracts.*

*Pritchard v. Elizabeth City*, 81 N.C. App. 543, 553–54, 344 S.E.2d 821, 827 (1986) (internal citations omitted). Thus, there is a critical distinction between the complete absence of authority to enter into a contract and the later improper exercise of existing contractual authority. Here, Defendants had authority to enter into temporary employment contracts with Plaintiffs, but misused that authority in violating the Twelve-Month Rule.[3] Consistent with *Pritchard*, I would hold that the defense of *ultra vires* is unavailable to Defendants.

---

[3] In *Sanders II*, we stated that "if the court below finds defendants automatically converted plaintiffs' positions from temporary to permanent on their own accord without appropriate classification and budgetary approval, they would have enacted an employment scheme in direct contravention of the state constitution and other sections of the regulatory scheme." *Sanders II*, 197 N.C. App. at 322, 677 S.E.2d at 188. Thus, the

Even so, the majority concludes that even if the contractual relationship between the parties is valid, there has been no breach because Plaintiffs failed to produce any evidence that "Defendants had made any promises or inducements to Plaintiffs to cause them to continue their employment beyond twelve months, other than to continue paying their normal wages," or "that Defendants had represented to Plaintiffs that their employment status would convert to that of a permanent employee after twelve months of service." *Ante*, at ___. The majority also notes that "there is nothing in the Commission rules or the relevant law that contractually obligated Defendants to treat Plaintiffs as permanent employees after twelve months of service." *Ante*, at ___. At this point, I believe the majority mistakes the remedial question (*i.e.*, the valuation of Plaintiffs damages based on Plaintiffs' expected compensation) with the underlying liability question (*i.e.*, whether a breach of the Twelve-Month Rule occurred). I agree that, at least with respect to the named Plaintiffs, there was never an expectation of permanent employee benefits after Plaintiffs continued in their temporary appointments beyond the

conclusion that Defendants misused their contractual authority in violating the Twelve-Month Rule has already been reached by this Court and this panel is bound by that decision. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

twelve month mark. Indeed, the trial court found as fact, unchallenged before this Court, that:

> There is no allegation that the benefits sought by Plaintiffs were bargained for, or granted, when Plaintiffs began their employment. In fact, prior to employment in their "temporary appointment" all of the Plaintiffs signed a statement acknowledging the provisions of 25 N.C.A.C. 1C.0405(b). Each of the Plaintiffs indicated in their depositions a desire for continued employment with the State beyond the twelve (12) month mark. Further, there are no allegations of promises or inducements made to Plaintiffs to cause them to continue their employment other than the payment of wages; and no allegations of representations, conduct, or acts of their employers indicating the employment would become permanent.

However, I believe these facts speak to value of Plaintiffs' expectation interest, not Defendants' underlying liability for breach of contract. In my view, Plaintiffs are entitled to an award of nominal damages in recognition of the technical injury resulting from Defendants breach of the Twelve-Month Rule.[4] *See Cole v. Sorie*, 41 N.C. App. 485, 490, 255 S.E.2d 271, 274 (1979)

---

[4] The majority suggests that both parties are in breach of the employment contract, stating, "[h]ere, Defendants ignored the Twelve Month Rule by permitting each Plaintiff to remain employed after twelve months. Likewise, each Plaintiff ignored the Twelve Month Rule by continuing to report to work beyond twelve months of employment." *Ante*, at ___. However, the Twelve-Month Rule is a constraint on the State, not the employees. I would therefore hold that only Defendants are in breach.

(standing for the proposition that, "in a suit for damages for breach of contract, proof of the breach would entitle the plaintiff to nominal damages at least." (internal quotation marks, citation, and brackets omitted)). Accordingly, I would grant partial summary judgment on the issue of liability for breach of contract in favor of Plaintiffs and remand for a determination of damages.

## 2. Plaintiffs' Motion for Class Certification

With respect to the issue of class certification, I also dissent from the majority's opinion because I would hold that the trial court's decision to deny Plaintiffs' motion for class certification is an abuse of discretion.

Rule 23 of the North Carolina Rules of Civil Procedure states, in pertinent part, that "[i]f persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued." N.C. R. Civ. P. 23(a). Our Supreme Court has recently explained the law with respect to class certification under Rule 23 as follows:

> First, parties seeking to employ the class
> action procedure pursuant to our Rule 23
> must establish the existence of a class. A
> class exists when each of the members has an

interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members. The party seeking to bring a class action also bears the burden of demonstrating the existence of other prerequisites:

> (1) the named representatives must establish that they will fairly and adequately represent the interests of all members of the class; (2) there must be no conflict of interest between the named representatives and members of the class; (3) the named representatives must have a genuine personal interest, not a mere technical interest, in the outcome of the case; (4) class representatives within this jurisdiction will adequately represent members outside the state; (5) class members are so numerous that it is impractical to bring them all before the court; and (6) adequate notice must be given to all members of the class.

When all the prerequisites are met, it is left to the trial court's discretion whether a class action is superior to other available methods for the adjudication of the controversy. . . . The touchstone for appellate review of a Rule 23 order . . . is to honor the broad discretion allowed the trial court in all matters pertaining to class certification. Accordingly, we review the trial court's order denying class certification for abuse of discretion. The test for abuse of discretion is whether a decision is manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision.

*Beroth Oil Co. v. N.C. Dep't of Transp.*, ___ N.C. ___, ___, 757 S.E.2d 466, 470-71 (2014) (internal quotation marks, citations, brackets, and footnote omitted) (second alteration in original).

Here, Plaintiffs' motion for class certification defined the putative class as all persons

> who have been or currently are employed by the State of North Carolina who are subject to the twelve-month limitation set forth in 25 N.C.A.C. 1C.0405(a); and been placed in temporary appointment for more than twelve consecutive months in violation of 25 N.C.A.C. 1C.0405(a) during the period of April 1, 2002 through the present; and have not received benefits including paid holidays, vacation leave, sick leave, health benefits, and when applicable, retirement benefits and longevity pay; excluding employees who work less than 20 hours per week and all employees of the sixteen institutions of the University of North Carolina system.

The trial court's order denying class certification concluded with respect to Plaintiffs' motion as follows:

> The claims of the Plaintiffs and the putative class members have an interest in the same issue of law and fact; that class counsel and the Plaintiff will adequately represent the interests of all class members with no conflict of interest; that they have a genuine interest in the outcome of the action; and that class members are sufficiently numerous that joining them would be impractical. *However, these factors do not outweigh the predominant issues affecting individual putative class*

> *members which are not capable of application of a general mathematical calculation, but would require extensive individual inquiry concerning class members' unique employment circumstances (i.e., discussions concerning employment status, requests or promises of benefits, higher pay in lieu of benefits, requests for permanent employment, etc.)*[.]

(Emphasis added). Thus, the trial court grounded its decision to deny class certification on the predominance requirement, concluding in effect that no "class" exists under Rule 23. *See Beroth*, ___ N.C. at ___, 757 S.E.2d at 470 ("A class exists when each of the members has an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members."). Accordingly, the question presented to this Court by Plaintiffs' appeal is whether the trial court abused its discretion in determining that no class existed based on the predominance inquiry. *See id.* at ___, 757 S.E.2d at 470 n.2 ("Therefore, we review the trial court's determination of whether plaintiffs established the actual existence of a class for abuse of discretion.").

In my view, the trial court abused its discretion in denying class certification because it conflated the remedial question concerning the calculation of damages with the underlying issue of liability for breach of contract. Specifically, the trial court's determination that "extensive

individual inquiry concerning class members' unique employment circumstances" would be necessary, including "discussions concerning employment status, requests or promises of benefits, higher pay in lieu of benefits, requests for permanent employment, etc.[,]" is a concern for the expectation value of Plaintiffs' damages—whether and what each putative class member expected to receive as compensation after the expiration of their twelve-month term. This is wholly separate from the underlying question of contract liability, a question common to all putative class members based on the narrowly defined class articulated by Plaintiffs, the incorporation of the Twelve-Month Rule into each employee's contract, and the admissions by Defendant that the Twelve-Month Rule was violated.

In *Beroth*, our Supreme Court stated that differences in the amount of damages owed to putative class members should not preclude class certification as long as the damages inquiry is not determinative of the underlying merits claim. *Id.* at ___, 757 S.E.2d at 475. This generally comports with federal precedent interpreting Fed. R. Civ. P. 23. *See generally* 2 William B. Rubenstein, *Newberg on Class Actions* § 4:54, at 205-10 (5th ed. 2012) (collecting cases and stating that "Courts in every circuit have . . . uniformly held that the 23(b)(3)

predominance requirement is satisfied despite the need to make individualized damage determinations.").

Here, the trial court acknowledged that "[t]he claims of the Plaintiffs and the putative class members have an interest in the same issue of law and fact[,]" yet denied class certification because of the possibility of individual damage calculations. Given the aforementioned precedent on this issue, I believe the trial court's action to be an abuse of discretion. I would certify the proposed class and grant partial summary judgment to Plaintiffs on the issue of liability for breach of contract.

**B. Defendants' Appeal**

With respect to Defendants' appeal of the trial court's award of attorneys' fees to Plaintiffs, I agree with the majority that Defendants' appeal is interlocutory because the actual amount of attorneys' fees owed by Defendants has yet to be decided. *Triad Women's Ctr., P.A. v. Rogers*, 207 N.C. App. 353, 358, 699 S.E.2d 657, 660–61 (2010) ("We, therefore, specifically hold that an appeal from an award of attorneys' fees may not be brought until the trial court has finally determined the amount to be awarded. For this Court to have jurisdiction over an appeal brought prior to that point, the

appellant would have to show that waiting for the final determination on the attorneys' fees issue would affect a substantial right."). Furthermore, I also agree that sovereign immunity is a substantial right for purposes of appellate review under N.C. Gen. Stat. § 1-277(a) (2013). *Kawai Am. Corp. v. Univ. of North Carolina at Chapel Hill*, 152 N.C. App. 163, 165, 567 S.E.2d 215, 217 (2002) ("This Court has repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review." (quotation marks and citation omitted)). However, I do not agree that Defendants are entitled to sovereign immunity in this case and would therefore dismiss Defendants' appeal in its entirety. Because the majority goes beyond a pure jurisdictional analysis and specifically affirms a portion of the trial court's order concerning attorneys' fees, I respectfully dissent.[5]

---

[5] The majority opinion states that "we review Defendants' appeal of the Attorneys' Fees Award only to the extent that their challenge is based on sovereign immunity; however, we dismiss Defendants' appeal to the extent that Defendants' challenge is based on some other defense or upon the merits." *Ante*, at ___. While the majority opinion does not go so far as to decide whether the trial court's award was proper under either N.C. Gen. Stat. § 6-19.1 or § 1-263, it does decide, and explicitly affirms "the portion of the trial court's order imposing the Attorneys' Fees Award 'as provided by law' based on the State's

The trial court's order states that "Defendants are taxed with the costs of this action, including attorney fees *as provided by law*." (Emphasis added). As the majority opinion notes, the trial court's order does not specify the statutory authority for its action. Nevertheless, the parties concede that attorneys' fees can only be awarded in this case, if at all, pursuant to either N.C. Gen. Stat. § 6-19.1 or § 1-263. Thus, Defendants enjoy the right of sovereign immunity in this case only to the extent that such a claim can shield them from paying out attorney fees under these two statutes. If the doctrine of sovereign immunity does not shield Defendants from paying out attorney fees under the statutes, the trial court's order cannot "deprive" Defendants of a substantial right nor "work injury" if Defendants are forced to attend another hearing as to the amount owed. *See Goldston v. Am. Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990) (stating that to meet the substantial right test for appealing interlocutory orders, "the right itself must be substantial and the deprivation of that substantial right must potentially work injury . . . if not corrected before appeal from final judgment.").

---

contention concerning its defense of sovereign immunity[.]" *Ante*, at ___.

N.C. Gen. Stat. § 6-19.1, entitled "Attorney's fees to parties appealing or defending against agency decision," provides that if certain prerequisites are met, "the court may, in its discretion, allow the prevailing party to recover reasonable attorney's fees, . . . to be taxed as court costs against the appropriate agency[.]" N.C. Gen. Stat. § 6-19.1(a) (2013). Thus, by its express terms, N.C. Gen. Stat. § 6-19.1 allows a party who prevails on an underlying merits claim to recover attorneys' fees from the State. This is an implicit waiver of any claim that the State has sovereign immunity from paying attorney fees awarded under the statute. *See Battle Ridge Cos. v. N.C. Dep't of Transp.*, 161 N.C. App. 156, 157, 587 S.E.2d 426, 427 (2003) ("It is an established principle of jurisprudence, resting on grounds of sound public policy, that a state may not be sued in its own courts or elsewhere *unless it has consented by statute to be sued* or has otherwise waived its immunity from suit." (emphasis added)). Accordingly, the defense of sovereign immunity is not available to Defendants under N.C. Gen. Stat. § 6-19.1 and this Court should therefore foreclose any further inquiry under the statute.

N.C. Gen. Stat. § 1-263, entitled "Costs," provides that "[i]n any proceeding under [the Uniform Declaratory Judgment

Act] the court may make such award of costs as may seem equitable and just." N.C. Gen. Stat. § 1-263. As is evident from the text, the statute does not expressly or impliedly waive the sovereign immunity of the State, and this Court has held that the Uniform Declaratory Judgment Act does not act as a general waiver of the State's sovereign immunity in declaratory judgment actions. *Petroleum Traders Corp. v. State*, 190 N.C. App. 542, 546–47, 660 S.E.2d 662, 664 (2008). Nevertheless, it is well-established that the State's sovereign immunity is waived in "causes of action on contract," *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423–24 (1976), and this Court has recently interpreted that language to include "declaratory relief actions seeking to ascertain the rights and obligations owed under an alleged contract." *Atl. Coast Conference v. Univ. of Maryland*, ___ N.C. App. ___, ___, 751 S.E.2d 612, 621 (2013).

Here, the Plaintiffs' declaratory judgment motion sought a declaration from the trial court concerning the parties' temporary employment contracts and the admitted violation of the Twelve-Month Rule. Plaintiffs' motion, and the trial court's subsequent order, were responsive to this Court's disposition in *Sanders II* when we remanded Plaintiffs' breach of contract claim with instructions for the trial court to "assess the terms of

[P]laintiffs' contracts with [D]efendants at the twelve month and one day mark and beyond" and "to declare [P]laintiffs' status and rights" under the temporary employment contracts. *Sanders II*, 197 N.C. App. at 323, 677 S.E.2d at 188–89. Thus, the declaratory relief at issue here concerns the "rights and obligations owed under an alleged contract." By consequence, and consistent with this Court's opinion in *Atl. Coast Conference*, Defendants cannot assert sovereign immunity to shield themselves from an obligation to pay costs under N.C. Gen. Stat. § 1-263. The defense of sovereign immunity is therefore not available to Defendants under either of the statutes potentially implicated by Defendants' appeal.

Accordingly, because the defense of sovereign immunity is not available to Defendants under N.C. Gen. Stat. § 6-19.1 or § 1-263, I would hold that Defendants have failed to meet the substantial right test and that we lack jurisdiction to hear Defendants' appeal at this time. Although the majority does not engage in a full merits analysis concerning whether the award was proper under N.C. Gen. Stat. § 6-19.1 or § 1-263, the majority errs in affirming a portion of the order. I would dismiss Defendants' cross-appeal in its entirety as interlocutory.